ORIGINAL

**FILED**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2011 JAN 31  AM II: 37

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

+  =  =  =  =  =  =  =  =  =  =  =  =  =

ROBERT F. DUGAN,

                Plaintiff,

-vs-

SCOTT A. MIDDLEBROOKS, et al.,

                Defendants.   Case # 5:10-cv-00367

+  =  =  =  =  =  =  =  =  =  =  =  =  =  =  =  +

PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT

+  =  =  =  =  =  =  =  =  =  =  =  =  =  =  =  +

**THE VERIFIED COMPLAINT, WITH ATTACHED AFFIDAVIT AND
EXHIBITS, STATES CLAIM[s] UPON WHICH RELIEF CAN
BE GRANTED; AND, TOGETHER WITH THE AFFIDAVIT[s] AND
EXHIBIT[s] SUBMITTED HEREWITH CLEARLY SHOW THAT GENUINE
ISSUES OF MATERIAL FACTS ARE IN DISPUTE, REQUIRING TRIAL**

A Rule 12 motion to dismiss can only be granted if the Complaint

fails to contain sufficient facts, and legal claims, to entitle the

Plaintiff to relief;  in other words, the Complaint should  not be

"dismissed" for failure to state a claim unless it appears beyond

doubt that Plaintiff can prove  no set of facts  in support of his

claim[s] that would entitle him to relief. Haines -vs- Kerner,

404 U.S. 519, at pages 520-521 [1972];  see also, Neitzke -vs-

Williams, 490 U.S. at 328.  In this proceeding, the verified

Complaint, supporting affidavit and exhibits [Doc. #1] clearly

state claims upon which this Court can grant relief.

Summary judgment is proper only when a party is entitled to judgment in their favor "as a matter of law," and, when the material facts are not in dispute. As shown hereinafter, the Plaintiff Dugan has set forth sufficient facts to state claims for Federal relief; and, material facts are at issue and in dispute which require a trial.

I.  **THE UNITED STATES HAS EXPLICITLY WAIVED IMMUNITY, BY STATUTE, ON CLAIMS ALLEGING PERSONAL INJURY CAUSED BY NEGLIGENT OR WRONGFUL CONDUCT OF GOVERNMENT EMPLOYEES ACTING IN THEIR "OFFICIAL" CAPACITIES**

When Congress enacted the Federal Tort Claims Act [FTCA], Title 28 U.S. Code, §§ 1346 and 2671-2680, it was designed to provide redress for ordinary torts recognized even by State law, and, to waive immunity of Federal employees for negligence or wrongfull acts or ommissions. Stone -vs- United States, 373 F.3d. 1129 [11th. Cir. 2004]. Under Florida law, to state a claim for negligence or wrongful act or omission, the Plaintiff need only show that the Defendant[s] owed the Plaintiff a duty of care, that the Defendant[s] breached that duty, and that the breach caused the plaintiff to suffer injury or damages. Lewis -vs- City of St. Petersburg, 260 F.3d. 1260, at page 1262 [11th. Cir. 2001]. Counsel for the Defendant[s] herein concedes this on page 6, issue II, of the Defendants' Motion [Doc. #17:6].

Thus, Plaintiff Dugan disputes that Defendants are "immune" from suit or damages on the "majority" of PLaintiff's claims as argued by Counsel for Defendants in the ir issue I [Doc. #17:4-5]. And, even if this Court finds Defendants "immune" from damages on

- 2 -

any, or some, of the Plaintiff's negligence  or  wrongful conduct

claims, the Defendants are  still  liable for damages in their

"individual" capacities for the alleged Constitutional claims.

**II.  PLAINTIFF HAS  NOT  FAILED TO FILE AND EXHAUST HIS ADMINISTRATIVE CLAIMS/REMEDIES REGARDING ALLEGATIONS THAT DEFENDANTS NEGLIGENTLY  OR  WRONGFULLY  DELAYED DENTAL CARE  AND  THAT THEY OFTEN AND REPEATEDLY FAILED OR REFUSED TO PROVIDE HYGIENE AND SANITATION ITEMS**

**This** argument of the Defendants' counsel is false.

The Defendants concede that:

"Plaintiff within his complain [sic]  often  combines his Constitutional claims with the Bureau being 'grossly negligent' to his dental care and providing hygiene products."

[Doc. 17:7 ;  Def. Motion to Dismiss, p.7].

Then, the Counsel for Defendants argues that:

"...Plaintiff has never filed an  administrative tort claim alleging that dental staff at FCC Coleman were negligent  as to the care of his teeth."

[Doc. #17:7]

However, the Plaintiff filed  numerous  and repeated written

formal, and informal, grievances, and Requests For Administrative

Remedies, concerning the  interminable  delays in providing dental

care, and, the Defendants' refusals to provide hygiene and basic

sanitation items.  [Doc. #1;  Exhibits B-1 thru B-39, attached to

Dugan's Affidavit supporting the <u>verified</u> Complaint].  See also.

Dugan's affidavit, para #2[c] [d][e][f][j][k][l][m][n], attached

to Doc. #1.

The Plaintiff therein gave sufficient "facts" to enable the

agents of the FBOP to investigate his claims;  and, those written

- 3 -

grievances and Requests for Administrative Remedies, and appeals, placed a value on his claims, and made demands for certain sums. [Doc. #1; exhibits B-6 & B-7 & B-22 & B-23 & B-31 & B-32 and B-39 p.1]

The exhaustion requirements of the FTCA only mandates that a claimant do two [2] things: One, give the Agency written notice of the facts underlying the claim[s] for negligence or wrongful conduct sufficient to investigate, and two, place a value on the claim[s]. Adams -vs- United States, 615 F.2d. 284, at 289 [5th. Cir. 1980], clarified at 622 F.2d. 197 [5th. Cir. 1980]. The amount of information that must be supplied is "minimal", Burchfield -vs- United States, 168 F.3d. at 1254-55 [11th Cir. 1999] [citing Adams, supra]. It is the "facts" concerning the negligence or wrongful conduct that must be supplied; the words negligence or wrongful conduct are not mandated. The "facts" and a value demanded are the only requirements.

Further, the counsel for Defendants overlooks the fact that the FTCA law does NOT mandate the use of "form 95" Adm. Tort Claim; that form itself even states on the reverse side that:

> "A claim is deemed to have been presented when a Federal Agency receives ... ...an executed form 95 or other written notification of an incident accompanied by a claim for money damages in a sum certain."

[see, Dugan's form 95 Adm. Tort Claim, p.2; Doc.#1, Ex. B-39, p.2]. See also, Mack -vs- United States, 414 F.Supp. 504 [E.D. Mich 1976] See also, Doc. #1, Ex. B-6, B-7, B-22, B-23, B-31, B-32.

FTCA law also provides that if an Adm. notice of tort is filed

- 4 -

mistakenly with the wrong officer or agency, that it is to be
.forwarded by that officer or agency to the proper agency; and,
is deemed filed then timely and properly in relation to the
exhaustion of Administrative notice of tort. See, i.e., <u>Green</u> -vs-
<u>United States</u>, 872 F.2d. 236 [8th. Cir. 1989].

Hence, even though some of Plaintiff Dugan's claims of
negligent or wrongful conduct were presented to the Agency [FBOP]
though the "BP-8 thru BP-11" Request For Adm. Remedy process,
and appeals to the Regional Office, and Central Office [of FBOP]
[see Doc. #1, with attached "Dugan's Affidavit" with Exhibits B-1
thru Exhibits B38], rather than by use of the "form 95" as appears
in Exhibits B-39, the Plaintiff certainly satisfied the "minimal"
requirements of <u>Burchfield</u>, <u>Green</u>, and <u>Mack</u>, supra, relating to
ALL of his combined tort and Constitutional claims.

Therefore, Plaintiff Dugan's claim[s] that Defendants were
"grossly negligent" to his dental care <u>and</u> relating to the denial
of basic hygiene and sanitation items going back to the year 2007,
are all properly before this Court. [1]

1/ The FTCA mandates that the Attorney General "shall" defend
any civil action against a Government employee, or their "estate,"
and, so the "deceased" defendants Dr. Jansma and L. Cundiff, or
their "estates," are still subject to this lawsuit. 28 U.S. Code,
Sec. 2679[c]; <u>McLaurin</u> -vs- <u>U.S.</u>, 392 F.3d. 774 [5th. Cir. 2004].
Plaintiff is investigating to determine the names/addresses of
the Administrators or Executors of their "estates" to accomplish
service upon them, since it appears Mr. Middendorf denies being
the personal representative of the "estates" of Jansma or Cundiff;
additionally, defendant "C. Jones" has not been served yet, but
Warden Middlebrooks has refused to tell Pltf. what Jones' full
name is [see, Dugan's Second Affidavit, para **25**, & Ex. **SA-1 & SA-2**].
Plaintiff requests additional time, and use of "discovery" so as
to properly accomplish service of process on <u>all</u> named Defendants.

- 5 -

### III. PLAINTIFF'S ALLEGATIONS CONCERNING DELAYS/DENIAL OF SHOWERS STATES A CLAIM FOR NEGLIGENCE OR WRONGFUL CONDUCT, AND/OR RELATES TO THE 8TH AMENDMENT "CONDITIONS OF CONFINEMENT" CLAIM[S] INVOLVING THE OFTEN AND REPEATED REFUSALS TO PROVIDE BASIC HYGIENE AND SANITATION MATERIALS.

Counsel for the Defendants apparently believes that Federal prison staff have "discretion" to simply refuse to allow prisoners to shower or bathe for weeks, months, or longer. [See, Doc. 17:8]

This "discretionary function" argument, Defendants' counsel ONLY applies to the issue of "delay in providing showers" [Doc.17:8-9].

However, the Defendants do not have "discretion" to refuse to allow prisoners to shower; even prisoners in Disciplinary Segregation, for violating prison rules -- in punishment status, are "entitled" to "three" [3] showers each and every week. See, U.S. Dept. of Justice, FBOP Program Statement #P5270.08[5].

All Federal prisoners, other than those in Disciplinary Seg., have the "right" to "shower regularly..." 28 Code of Fed. Reg., Sec. 541.12[4]; Sec. 551.1 & Sec. 551.6; see also,[7]28 U.S. Code, Sec. 4042.

The above listed policies and regulations remove any "discretion" to deny prisoners showers for weeks, months, or longer.

Aside from that, even if the two-part discretionary exception applied, the Defendants have failed to satisfy the second prong of that exception because it is not grounded in "Public Policy " to deny human beings the ability or "right" to "shower" for weeks, months, or longer. [as shown, it is against policy; and, modern civilized Society expects humans to be able to shower daily, at least]

- 6 -

The allegations that Plaintiff was denied "showers" also relates to the totality of his "conditions of confinement" claims [denial of hygiene and sanitation materials] under the Cruel and Unusual Punishment clause of the 8th Amendment. See, i.e., Shakka -vs- Smith, 71 F.3d. 162 [4th Cir. 1995] - [Court found no cruel and unusual punishment to deny prisoner shower for 3 days, in 1995, where court noted prisoner was provided cleaning materials]. The Supreme Court has said:

> "Conditions of confinement 'alone or in combination' may deprive prisoners of the minimal civilized measure of life's necessities... ...Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect..."

Wilson -vs- Seiter, 501 U.S. 294, at 304, 111 S. Ct. 2321 [1991]- [citing Rhodes -vs- Chapman, 452 U.S. at 347, 101 S. Ct. 2392 [1981].

In this case, Plaintiff Dugan has alleged in his verified Complaint, with attached affidavit and exhibits [Doc. #1] that he was often and repeatedly refused basic hygiene and sanitation items such as soap, scouring cleanser, since as far back as the year 2007, and, also denied "showers" for a week in at least one instance -- and that it caused personal injuries. [see, Doc. #1,page 8; and, exhibits B-27 & B-29 & B-39, p.1-8]. This is a combination of facts, more egregious than those in Shakka -vs- Smith, supra. Denial of hygiene items such as soap and cleaning materials, and, denial of daily showers, in combination have a "mutually enforcing effect" and disclose a violation of the 8th Amendment.

- 7 -

## IV.  THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON DUGAN'S EIGHTH AMENDMENT CLAIMS THAT DEFENDANTS SUBJECTED HIM TO CRUEL AND UNUSUAL PUNISHMENT.

Dugan's <u>verified</u> Complaint alleges on it's face:

"Since at least as far back as April, 2007, and up until the signing of this Civil Rights Complaint [with attached "Dugan's Affidavit Supporting Complaint, With Attached Exhibits" B-1 thru B-39], the named Defendant[s] Scott Middlebrooks, Dr. Jansma, L. Cundiff, A. Kendrick, U. Vargas, Francisco Santos, C. Baker, Correctional Officer C. Jones, Correctional Officer R. Rutherford, and Other Agents and Employees of the Federal Bureau of Prisons, and United States of America, have subjected me to an excessively long period[s] of un-necessary pain and suffering, caused physical injuries, , humiliation, mental anguish, by their obdurate, wanton, and deliberate indifference to my serious medical needs for prompt and effective Dental Treatment for two [2] cracked, broken, crumbling teeth in which the fillings had fallen out, and/or, by often and repeatedly failing and refusing to provide me with soap, scouring cleanser, and other basic items necessary to maintain sanitation and proper personal hygiene they have caused me pain and suffering from colds, flus, rashes, sores on skin, diarrhea, infections, MRSA, and/or exposed me to enhanced and un-necessary risks of those and other diseases/injury[s] as a proximate cause of their deliberate indifference to my health and medical needs, or as a proximate cause of their gross negligence, all while I was a Federal prisoner in their custody and under their control." [and incorporating an affidavit and exhibits that were attached to the filed Complaint].

[Doc. #1:8].

### A)  THE OBJECTIVE COMPONENT OF DUGAN'S CLAIM[S] THAT HE WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT

Prison officials have a Constitutional duty under the Eighth Amendment to "...ensure that inmates receive adequate food, clothing, shelter and medical care, and ... ...take measures to guarantee the safety of the inmates." <u>Farmer</u> -<u>vs</u>-<u>Brennan</u>, 511 U.S. 825, at ____, 114 S.Ct. 1970, at 1976 [1994]. The Eleventh Circuit Court of Appeals has interpreted the Eighth

- 8 -

Amendment's requirements for all prisoners to be provided with
"...reasonably adequate food, shelter, clothing, and sanitation."
<u>Hamm</u> -<u>vs</u>- <u>Dekalb County</u>, 774 F.2d. 1567 [11th Cir. 1985].

   The Federal Bureau of Prison's own policies and regulations
mandate that prison staff are to provide basic hygiene and
sanitation items to prisoners because of the objective extreme
and serious "risk" to both <u>health</u> and <u>security</u> if prisoners are
not properly groomed and provided basic hygiene and sanitation
supplies.  The policies even specifically mention "soap" and
"showers".  Program Statement[s] 5230.05 and P5270.08[5]; and,
28 Code of Fed. Regulations, Section[s] 54.21, & 540.21[b], &
541.12[4], & 551.1, & 551.6, & 551.7.

   These regulations and policies are a reflection of the
"objective" needs  for prisoners entitlement to be protected
from extreme and serious "risks" to their health, infectious
diseases, epidemics, etc., which Society, and Science, acknowledge
to have a carollary and direct relationship to the lack of
cleanliness and sanitation.  Health Department memos advise
Society, and prisoners, to "use plenty of soap," to wash hands
frequently during each day, and, to "shower regularly." [see, ie,
Ex. B-39, p.6 attached to <u>verified</u> Complaint;  Doc. #1;  see also,
Ex. SA-<u>15</u>, "MRSA FACT SHEET", attached to Dugan's Second Affidavit
Supporting Complaint, submitted herewith].  These safety tips
are even more important for prisoners, and others living in close
and confined quarters.

- 9 -

Plaintiff Dugan submits that there are various "objective component" questions in this case, but <u>not</u> limited to the following:

1. "Since 2007, until the signing of the complaint, was the often and repeated denials and refusals to provide Dugan and other prisoners confined in close quarters with soap, scouring cleanser, and other basic sanitation supplies for weeks, or even months, and, exposing them to enhanced 'risks' of infectious diseases  unless the prisoner was 'indigent' -- having had less than $6.00 during the preceding 30 days  --  sufficiently extreme or serious to satisfy the objective component requirement of <u>Rhodes/Wilson</u>?"

2. "When Dugan was denied showers for over a week while locked in a cell, and, was denied/refused soap and cleaning supplies, resulting in physical injuries, was it sufficiently extreme or serious to satisfy the objective component requirement of <u>Rhodes/Wilson</u>?"

3. "When Dugan was  compelled  to endure pain, and cut, bleeding lips and tongue [and "risks" of recurring infections from open wounds in mouth] caused by sharp, jagged edges of broken, cracked, crumbling [and still further deteriorating] teeth in which the fillings had fallen out while in prison, since at least as far back as the year 2007, was it sufficiently extreme or serious to satisfy the objective component requirement of <u>Rhodes/Wilson</u>?"

The Supreme Court, Eleventh Circuit Court of Appeals, and Dugan, all answer that the answer to those three [3] questions is "YES." Even these "risks" to health, and "delays," in dental care, are sufficiently extreme and serious to state 8th Amendment claims. <u>Helling</u> -<u>vs</u>- <u>McKinney</u>, 509 U.S. 25, at pages 33-35 [1993]; <u>Farmer</u> -<u>vs</u>- <u>Brennan</u>, 511 U.S. 825, at 838-842, 114 S. Ct. 1970 [1994]; <u>Chandler</u> -<u>vs</u>- <u>Baird</u>, 926 F.2d. 1057, at 1065-66 [11th Cir. 1991]; <u>Chandler</u> -<u>vs</u>- <u>Cosby</u>, 379 F.3d. 1278, at 1284 [11th. Cir.    ]; <u>Pugh</u> -<u>vs</u>- <u>Locke</u>, 559 F.2d. 283 [5th. Cir. 1977]; <u>Green</u> -<u>vs</u>- <u>Ferrell</u>, 801 F.2d. 765, at 771 [5th Cir. 1986];

Hamm -vs- Dekalb County, 774 F.2d. 1567 [11th Cir. 1985];

Novak -vs- Beto, 453 F2d. 661, at 665 [5th Cir. 1975];

Daigre -vs- Maggio, 719 F.2d. 1310, at 1312 & n5 [5th. Cir. 1984];

Cotney -vs- Franklin, 2005 US Dist LEXIS 43391  [Ala. 2005];

Gross -vs- Parker, 2008 US Dist LEXIS 3123 [M.D. Fla. 2008];

Gillilan -vs- Garmon, 2007 US Dist LEXIS 455 [M.D. Ga. 2007];

Gillis -vs- Litscher, 468 F.3d. 488, at 494 [7th. Cir. 2006];

Newsome -vs- Chatham County Detention Center, 256 Fed. Appx 342
[11th. Cir. _____]-[30 days without pain medication while
awaiting dental treatment was cruel and unusual punishment];

Farrow -vs- West, 320 F.3d. 1235 [11th. Cir. 2003]-[dentist
delaying dental treatment for 15 months, with doctor knowing
that prisoner suffering pain, bleeding in mouth, potential
infections from wounds in mouth, presented Jury issue on claim
of cruel and unusual punishment];  Harrison -vs- Barkley, 219
F.3d. 132, at 138 [2nd Cir. 2000]-[deliberate indifference to
serious medical needs shown where prison staff delayed or
refused to treat cavity in prisoner's tooth for nearly 1 year];

Hanks -vs- Ragan, 2007 US Dist LEXIS 24820 [M.D. Ga. 2007]--
[ delay  in providing dentures -- routine care -- was cruel];

Wynn -vs- Southward, 251 F.3d. 588, at 593 [7th Cir. 2001]--
[..."dental care is one of the most important medical needs of
inmates."];  McEllingott -vs- Foley, 182 F.3d. 1248, at 1257-58
[11th Cir. _____]-[ "A core principle of Eighth Amendment juris-
prudence in the area of medical care is that prison officials
with knowledge of the need for care may not, by failing to

provide care, delaying care, or providing grossly inadequate
care, cause a prisoner to   needlessly suffer  the pain
resulting from his or her illness."];  Chance -vs- Armstrong,
143 F.3d. 698, at 703 [2nd Cir. 1998]-[deliberate indifference
to dental needs of prisoner is cruel and unusual punishment];
Cooper -vs- Schriro, 189 F.3d. 781, at 783-784 [8th. Cir. 1999]-
[deliberate indifference to dental problems of prisoner];
Hunt -vs- Dental Dept., et al., 865 F.2d. 198, at 200 [9th Cir.
1998]-[Delay in dental care was cruel and unusual punishment];
Brown -vs- Hughes, 894 F.2d. 1533, 1537-1539 [11th. Cir. 1990]-
[Delayed treatment was a wanton infliction of pain on prisoner];
Harris -vs- Cowetta County, 21 F.3d. 388, at 393-394 [11th Cir.
1994]-[Delayed treatment is cruel and unusual punishment];
Wilson -vs- Seiter, 501 U.S. 294, at 297, 115 L.Ed.2d. 271, at 278
[1991]-[only "un-necessary and wanton infliction of pain" is
cruel and unusual punishment].

     But, Plaintiff Dugan, and this Court, can easily also
envision and fashion other additional "objective component"
 questions from the "facts" shown in Dugan's verified Complaint,
such as:

4.   "Did the interminable delays in providing "routine care"
     regarding Dugan's broken, crumbling teeth which have still
     not been 'restored' for years since at least 2007,
     causing "pain without any penological purpose", and "risks"
     of  future infections from wounds in oral cavity area,
     and continuing crumbling and deterioration of periodontal
     status which may render his teeth beyond restorability,
     disclose an extreme and serious medical  problem to
     satisfy the "objective component" of Rhodes/Wilson?"

- 12 -

5.  "When Plaintiff Dugan, and hundreds  of other prisoners
    confined in close quarters, are denied or refused soap,
    scouring cleanser, and other basic hygiene and sanitation
    items, for periods of up to a week, or even months, at a
    time -- [and sometimes where the prison is on "Lockdown"
    status where they cannot even get out of cells to go to
    the Commissary even if they could afford to purchase
    hygiene and sanitation items, if they are lucky enough to
    have had over $6.00 during the preceding 30 days] --
    does it present an extreme or serious  "risk"  to the health
    of Dugan [and other prisoners] that Dugan may contract colds,
    flus, staph infections, MRSA, or other highly contagious
    diseases  un-necessarily, and,  expose Dugan and others to
    serious potential  future  pain or death, so as to satisfy
    the "objective component" of Rhodes/Wilson?"

The Supreme Court, and others, has already answered these

questions in the affirmative; "physical torture," and

"pain without any penological purpose,"and, "risks" to the

health and safety of prisoners do indeed satisfy the "objective

component" question involved in 8th Amendment claims.  See,

Wilson -vs- Seiter, 501 U.S. 294, at page 308, 111 S. Ct. 2321

[1991]; Helling -vs- McKinney, 509 U.S. 25, at 33-34, [1993];

Farrow -vs- West, 320 F.3d. 1235 [11th. Cir. 2003];  McEllingott

-vs- Foley, 182 F.3d. 1248, at 1257-58 [11th. Cir. _____].

     Thus, in view of the "facts" shown in Dugan's verified

Complaint, with attached affidavit and exhibits B-1 thru B-39,

and together with Dugan's Second Affidavit, submitted herewith

accompanied by affidavits from Cedric Walker, Selbie McNair-Bey,

Carolos Marulanda, and other prisoners, it is obvious that the

Defendants' arguments that "Plaintiff fails to present any facts

to meet this objective showing" [Doc. #17:11-12] is completely

and absurdly preposterous.  Like Defendant Middlebrooks, counsel

for the defendants appears to like to ignore the "facts."

**B) THE SUBJECTIVE COMPONENT OF PLAINTIFF'S CLAIMS THAT HE WAS AND IS BEING SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT.**

The subjective component of the Cruel and Unusual Punishment claim[s], as required by the Supreme Court to obtain relief, puts a burden on Dugan to show that each defendant prison official had a "culpable state of mind," i.e., that they were "deliberately indifferent" to a known "risk" of serious future or present harm to Dugan's health or safety. Farmer -vs- Brennan, 511 U.S. 825, 114 S. Ct. 1970 [1994]; Wilson -vs- Seiter, 501 U.S. 294, at 296 & 297-311, 115 L.Ed.2d. 271, at 277, & 278-287 [1991].

In Wilson, the Court said, it is the "...unnecessary and wanton infliction of pain" and that "obduracy and wantoness" characterize the subjective state of mind which is prohibited by the cruel and unusual punishment clause ; "deliberate indifference would constitute wantoness..." Wilson -vs- Seiter, 501 U.S. 294, at 297 & 299 & 302,  115 L.Ed.2d. at 278 & 279 & 281 [1991].

Or, in the context of risk to health in the dental field, and/or involving "pain," the Court of Appeals for Eeleventh Circuit said:

> "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, or providing grossly inadequate care, delaying care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." [underscoring added]

McEllingott -vs- Foley, 182 F.3d. at 1257 [11th Cir. ____];

See also, Farrow -vs- West, 320 F.3d. 1235 [11th Cir. 2003];

Newsome -vs- Chatham County, 256 Fed. Appx. 342 [11th Cir _____];

Harrison -vs- Barkley, 219 F.3d. 132, at 138 [2nd Cir. 2000].

- 14 -

The Supreme Court, and Eleventh Circuit, recognize that:

"The long duration of a cruel prison condition may make it easier to establish knowledge and hence some form of intent..."

Wilson -vs- Seiter, 501 U.S. at 300, 115 L.Ed.2d. at 280 [1991];

Farrow -vs- West, 320 F.3d. 1235 [11th. Cir. 2003]-[where the prison dentist delayed dental care of a known dental need for treatment for 15 months presented a Jury issue in a cruel and unusual punishment claim].

In this case each named Defendant was either verbally, or in writting given complaint[s], and grievances, in at least one instance -- and sometimes in repeated instances -- from Dugan that he had two "broken, cracked teeth," that were causing his lips and mouth to bleed, from jagged edges of the crumbling teeth, for "years" that he had been requesting dental care for those "two" teeth that were broke and causing him "pain" and "suffering" and that the teeth were continuing to deteriorate "because the edges of those teeth are now cracking and breaking up, worsening problems,"and that he was "in pain since 2007 with this"and asking "Do you know how many more Years?" he would have to wait on the "Routine Care" waiting list. [see Exhibits B-7 thru B-15, attached to Dugan's verified Complaint with supporting affidavit; Doc. #1]. Those written pleas for dental treatment were submitted to Defendants Dr. Jansma, L. Cundiff, A. Kendricks initially. Then, after waiting YEARS for relief/treatment, PlaintiffDugan filed informal, and formal, grievances and appeals to Defendants C. Baker, Francisco Santos, and Middlebrooks -- and attached copies

- 15 -

of those written requests for treatment were attached by Dugan to
the informal, and formal, Requests for Adm Remedy, which were
then reviewed by, and "denied" byDefendants C. Baker, Francisco
Santos , and Warden Middlebrooks [Exhibits B-7, B-6, B-5].

The ONLY Defendants that don't have subjective knowledge,
or a culpable state of mind, with regard to the delays and denial
of adequate dental care are Defendants C. Jones and R. Rutherford;
but, their culpable state of mind, knowledge as to the cruel
conditions of confinement involve the refusal of Hygiene and
sanitation materials, as will be shown hereinafter.  But, these
"facts," alleged by Dugan in his verified Complaint, with attached
affidavit [see para #2a-g], with exhibits, clearly show that the
defendants delayed Dugan's dental treatment for YEARS -- and,
the two broke, cracked, crumbling teeth STILL have NOT been fixed
or given "restoration" even though Defendant Dr. Jansma told Dugan
in October, 2008, that he would "restore" the two fractured teeth
shortly after the prison came off "Lockdown" status,  [see, Ex. B-11],
[and see, handwritten notes of Dr. Jansma dated 10-28-08 in the
"Dental Treatment Record" submitted in Defendants' Ex. #9; and,
Ex. SA-3, attached to Dugan's Second Affidavit, submitted herewith].
Thus, Dr. Jansma and dental staff "knew" that Dugan had broken
teeth, and, that they needed to be "restore[d] at another appt."
That was over two years ago, and still has not been done, even
though Dr. Jansma, again, had Dugan in the dental chair in December,
2009;  but, then, told Dugan to put in another request [Ex. B-13].

- 16 -

Dugan straight out mentioned that he felt he was being subjected to cruel and unusual punishment, regarding "years" of "suffer[ing] needlessly" waiting for dental care when he submitted a written request to Defendant U. Vargas [Ex. B-15]; But, since that time, in May 19, 2010, Dugan was notified that the "Chief Dentist" ..."will asssign a dentist to reevaluate your condition" [Ex. B-1]. Yet, to this date, no dentist has even looked in Dugan's mouth; a dental hygienist did summon Dugan to the Dental Clinic on Sept. 24, 2010, and told him they would "now" start his "routine care," and she merely took x-rays and cleaned Dugan's teeth -- noting "mod. bleeding" and told Dugan she did  NOT know when a dentist would restore his two broke teeth, but that he would  be "placed on call-out for exam" in the future.  Still the two broke, cracked and crumbling teeth remain;  causing pain and "mod. bleeding'. [see, Dugan's Second Affidavit, para 18-24, and Ex. SA-4-9 submitted herewith].

Dugan never was asked about his "pain level" by Dr, Jansma, and, never told Dr. Jansma that his pain was only "level 1" on a scale of one to ten; Dugan never said his pain was only "slightly sensitive" in his tooth or teeth; and, Dugan did tell Dr. Jansma, L. Cundiff, and, A. Kendrick that he had pain, and bleeding in his lips and mouth, besides the pain in teeth [see, Dugan's Second Affidavit, para. 18-24; and Ex. B-2 attached to Dugan's Affidavit supporting complaint]. There was pain in the lips and mouth, not just in teeth, but caused from the jagged crumbling edges of the fractured teeth. For years. Continuing.

- 17 -

This was a documented need for dental care, and treatment recognized as fractures of teeth that should be Restored, or "fillings" replaced, as early as October 28, 2008. Yet, those fractured, crumbling teeth have not yet been "restored" or been given fillings in the cavities so as to provide relief from the needless suffering which serves no penological objective; in point of fact, they have been further deteriorating because of their weakened condition [fragile edges continuing to break off]. These documented medical needs of Dugan have been in the possession of Defendants Dr. Jansma, L. Cundiff, A. Kendrick, Warden Middlebrooks, Francisco Santos, C. Baker, and U. Vargas since Oct. 28, 2008 [see, Ex. SA-3 thru SA-9, and B-1 thru B-15], and he has written and given them prior "notice" of his needs and his suffering. They were obdurate, wanton, and deliberately indifferent by delaying and/or failing to provide the care to relieve his pain and suffering from documented dental needs, and even now allow his dental needs to be un-fulfilled. Surely, Dugan has established they had the requisite subjective culpable state of mind by their delaying needed care for YEARS, while they had been informed of his suffering and his requests for assistance to receive "prompt and effective dental care."

The Court of Appeals for this Circuit has already deemed these types of delays for documented medical and dental needs to be contrary to the Cruel and Unusual Punishment clause of the Eighth Amendment to the U.S. Constitution. Farrow -vs- West, 320 F.3d. 1235; McEllingott -vs- Foley, 182 F.3d. 1248.

As to the often and repeated refusals and failures to provide soap, scouring cleanser, and other sanitation materials, which did in fact cause physical injuries to Dugan in October, 2009, and in February, 2010, and at other times, the two [2] affidavit[s] signed by Robert F. Dugan, and the exhibits attached thereto, together with the affidavits sumitted herewith made by Cedric Walker, Carlos Marulanda, Selbie McNair-Bey, Clark Kelley, Roderic Scott Russell, and Ramon Lopez [separate documents filed herewith] clearly disclose "facts" that defendants C. Baker, Francisco Santos, R. Rutherford, C. Jones, Warden Middlebrooks, each were aware of Dugan's requests for soap, scouring cleanser, and other sanitation materials, and then either refused to provide hygiene and sanitation materials or failed to ensure that they were provided;  and Dugan was caused physical injury, as were other prisoners seriously injured  [see, Dugan's Affidavit attached to his <u>verified</u> Complaint, Doc #1;  Ex. B-17 thru B-39; see also, submitted herewith, the Second Affidavit of Dugan, Ex. SA-15 thru SA-26, and the other separate affidavits].

Defendant Middlebrooks has been aware of Dugan's complaints of denial of "showers" for over a week at a time since August, 2008 [Ex. SA-29 thru SA-40].  The Defendants named herein each had the subjective culpable state of mind evincing a deliberate indifference to the "risks" to Dugan's health by refusals and denials to provide adequate showers, soap, scouring cleanser, and other sanitation materials -- refusing them even when Dugan requested them in writting.

- 19 -

C)   THE DEFENDANTS ARE NOT ENTITLED TO "QUALIFIED IMMUNITY"

1.   the right to dental care

The U. S. Court of Appeals for the Eleventh Circuit has already clearly established the Constitional right of prisoners under the 8th Amendment to not suffer "needless pain" from the delay or denial of dental care that is recognized by a doctor as needing treatment, or, even if the layman could recognize the need for prompt dental care.  Farrow -vs- West, 320 F.3d. 1235 [11th. Cir. 2003];  further, prison policies and regulations give prisoners the "right" to dental care.

Dr. Jansma, L. Cundiff, A. Kendrick, and Middlebrooks, Santos and Baker, were aware that Dugan has been suffering "needless pain" for "YEARS" because of two fractured teeth, that even Dr. Jansma documented as needing to be "restored," in Oct. 2008. There has been no penological need to compell Dugan to suffer this needless pain since his written requests in 2007 until today. Defendant U. Vargas was even told by Dugan that these facts amounted to cruel and unusual punishment;  but, the suffering still even continues today from two fractured teeth.  This clearly is a case of obdurate, wanton, deliberate indifference to the needs for dental care, and needless pain and suffering Dugan is being compelled to endure, even at future "risk" to further deterioration of his periodontal health and status, as shown in Dugan's verified Complaint, his own two affidavits, and exhibits.

2.   Physical injuries, and "Risk" to Health, Caused By Prison Staff's refusals and failure to provide soap and sanitation materials

The Supreme Court, and the Court of Appeals for the Eleventh Circuit have already clearly "established" that it is a violation of the 8th Amendment to the Constitution to put prisoners at "risk" to their health, and/or to refuse and fail to provide prisoners with a "safe" and "sanitary" environment -- even by failing to provide soap, sanitary materials, and, showers for the prisoners.  [see cases cited herein at pages 7 - 14].  Further,

- 20 -

the Defendants' own prison policies and Code of Federal
Regulations mandated that prisoners are to be provided with
"soap," hygiene and sanitation materials, and even "showers"
as a "right" expressly provided to prisoners in the policies
and regulations.  Defendants cannot reasonably claim they did
not know that Dugan had a right to soap, sanitation materials
or showers; that is absurd and ridiculous.  And, therefore,
this Court should deny the defendants's request for summary
judgment, and, for "qualified immunity" as a defense against
Dugan's well established claims of violations of his federal
Constituional rights under the 8th Amendment.

## CONCLUSION

Since Dugan has shown herein, and in his verified Complaint,
affidavits and exhibits, that the Defendants  owed  Dugan
a duty of care, that they breached that duty through negligence,
wrongful conduct, and/or by deliberate indifference, and, that
they in fact caused physical injuries and pain and needless
suffering to be inflicted upon Dugan for YEARS, and, placed him
at serious "risk" to his future health by enhanced exposure to
serious "risks" of highly contagious infections and diseases,
and, the Defendants and Dugan have "disputed" the material "facts"
which Dugan still claims are true in his verified Complain,
affidavit[s], and exhibits, this Court should  DENY  the Defendants'
motion to dismiss and for summary judgment in their favor;  the
disputed "facts" can only be resolved by Jury at trial.

On Summary Judgment motions, the "facts" are to be construed
in the favor of the party opposing the summary judgment [Dugan].

Respectfully presented by:

Date: _JAN. 23, 2011_

Robert F. Dugan
#23771-168
Fed. Corr. Complex, USP-1
P.O. Box 1033
Coleman, Florida  33521-1033

cc:  Mr. Middendorf
CERTIFICATE OF SERVICE,
SUMITTED HEREWITH.

- 21 -